UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PHARMACOGENETICS DIAGNOSTIC | ) | |
| LABORATORY, LLC | ) | |
| | ) | |
| Debtor | ) | CASE NO. 16- 33404-thf |
| | ) | |

**EMERGENCY MOTION TO GRANT LIENS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS PURSUANT
TO SECTIONS 105, 363, AND 364 OF THE BANKRUPTCY CODE**

Comes the Debtor, Pharmacogenetics Diagnostic Laboratory, LLC ("PGXL" or "Debtor"), by counsel, and respectfully requests that the Court enter an order pursuant to sections 105(a), 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002, 4001(c) and 9014 (the "Bankruptcy Rules") authorizing the Debtor to incur post-petition financing on a secured superpriority administrative expense basis (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

**INTRODUCTION**

The Debtor proposes to borrow $50,000.00 from its president and CEO, board member, member of the executive committee, and majority member, Dr. Roland Valdes. The Debtor's actions herein were approved by Dr. Mark Linder, the Debtor's executive vice president and COO, board member, member of the executive committee, and a minority member. The essential terms of the proposed new financing arrangements between Dr. Valdes and Debtor are as follows:

**a.     Advances:** Subject to this court's authority to borrow and issuance of an order granting security interests and priority to Dr. Valdes, Dr. Valdes will make available new financing to

Debtor in an amount not to exceed $50,000.00. These advances are intended to meet Debtor's cash needs as set forth in its operating budget.

b.     **Interest:** Advances will bear interest at a rate of six percent (6%) simple interest.

c.     **Repayment:** The Debtor shall repay the Note in one lump sum on December 1, 2017, together with interest thereon. The Debtor additionally agrees to pay Dr. Valdes, upon the execution of the DIP loan documents, and otherwise on demand, all costs and expenses incurred by Dr. Valdes in connection with the preparation, negotiation and delivery of the DIP loan documents.

d.     **Security and Priority:** In order to secure the advances to be made, Debtor will be required to execute a security agreement in favor of Dr. Valdes. Debtor will thereby grant Dr. Valdes a security interest in and to all of Debtor's post-petition accounts receivable. In addition to being secured, the obligations of Debtor to Dr. Valdes under the new financing shall have the highest priority as expenses of administration pursuant to the provisions of sections 503(b), 507(a)(1) and 364(c)(1) of the Bankruptcy Code.

e.     **Carve-Outs:** Dr. Valdes has agreed to carve out from his collateral an amount up to $50,000, to pay for the professional fees of the Debtor, the United States Trustee's quarterly fees, and any fees imposed upon the estate by the Court.

f.     **Waiver of Section 506(c) Claims:** In exchange for the carve out described above, the Debtor has, on behalf of the estate, waived any right to surcharge the DIP loan collateral pursuant to Section 506(c) of the Bankruptcy Code.

h.     **Indemnification:** The Debtor has agreed to indemnify Dr. Valdes for any action he takes on behalf of the Debtor in the Chapter 11 Case, provided, however, that this indemnification

shall not extend to any claim the estate may hold against Dr. Valdes for actions of Dr. Valdes prior to the Petition Date.

**i.** **No Set-Off:** The Debtor has agreed that, despite any claim the estate may have or allege it has against Dr. Valdes, it may not exercise any right of setoff against amounts owed to Dr. Valdes pursuant to the DIP loan documents.

## JURISDICTION

1. On November 8, 2016 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to manage its property and operate its business pursuant to §§ 1107(a) and 1108.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The statutory predicates for the relief requested are Sections 105, 363, 365 and 1146 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9008 and 9014 of the Bankruptcy Rules.

## BACKGROUND

4. PGXL is a Kentucky limited liability company founded in 2004 by Dr. Roland Valdes, Jr. and Dr. Mark W. Linder. Dr. Valdes is a professor and senior vice-chairman of the Department of Pathology and Laboratory Medicine, professor of biochemistry and molecular biology, and holds the appointment of Distinguished University Scholar at the University of Louisville. Dr. Linder is a professor in the Department of Pathology and Laboratory Medicine at the University of Louisville and is the director of Clinical Chemistry and Toxicology at the University of Louisville Hospital.

5.      PGXL is a commercial and research laboratory for pharmacogenetics working to bring genetic drug sensitivity testing into the medical mainstream. It offers molecular diagnostic testing and interpretive services to physicians, clinics, and hospitals. PGXL's principal office is located at The Nucleus Building, 201 E. Jefferson Street, Suite 309, Louisville, Kentucky 40202.

6.      In March 2011, University of Louisville Foundation, Inc. ("ULF") made a capital contribution to Debtor and was admitted as a member of it. Debtor's membership interests are owned as follows: Dr. Valdes, 59.68%, Dr. Linder, 8.15%, and ULF, 32.17%. Debtor's Board of Directors are: Dr. Valdes, Dr. Linder, Jason Tomlinson for ULF, and Robert Proulx as elected by the Board.

7.      The Debtor currently employs approximately 21 employees.

8.      The Debtor anticipates 2016 gross revenues of approximately $8.8 million.

9.      In addition to the maturity of its line of credit with Stock Yards Bank & Trust Company as detailed herein below, Debtor's primary reason for seeking Chapter 11 relief is the recent assessment against it by Medicare totaling approximately $26 million. Debtor is contesting this assessment and believes that the ultimate liability, if any, will be significantly less than $26 million.

10.     By letter dated October 4, 2016, CGS Administrators, LLC ("CGS"), the Medicare contractor for region J15 (Medicare Part B) issued an overpayment demand to PGXL. The overpayment demand is the result of an audit conducted by AdvanceMed, the Zone Program Integrity Contractor ("ZPIC") for Medicare Part B in Kentucky. AdvanceMed conducted a post-payment audit of thirty (30) patient records for claims with dates of service from January 1, 2012 through September 23, 2015. As a result of its review, AdvanceMed imposed a 100% denial rate for these claims, which it then extrapolated to the universe of claims submitted by PGXL during

this same period. The extrapolation resulted in the $26,333,173.00 overpayment demand issued by CGS. PGXL disagrees with the findings of AdvanceMed as well as the sampling and extrapolation performed. PGXL has engaged counsel to appeal the overpayment determination and has begun the administrative appeal process by requesting redetermination. There are five levels of administrative appeal of which redetermination is the first. The request for redetermination was filed on November 3, 2016. CGS has approximately sixty (60) days to issue a redetermination decision. Debtor believes that the ultimate liability, if any, will be significantly less than $26 million.

11.    Debtor has filed with its Emergency Motion for Authority to Use Cash Collateral, and to Provide Adequate Protection ("Cash Collateral Motion") which included Debtor's projected income and expenses through November 30, 2016. Debtor's Cash Collateral Motion reflect an anticipated need for an additional $50,000.00 through November 30, 2016.

12.    In order to aid the Debtor in servicing its debts and making it through this month, Dr. Roland Valdes has agreed to provide a line of credit to Debtor in the amount of $50,000.00 (the "DIP Financing").

13.    As a condition of the DIP Financing, Dr. Roland Valdes has requested that the DIP Financing be on a secured basis.

14.    An immediate need exists for PGXL to obtain financing in order to preserve the value of its business and assets as debtor-in-possession under Chapter 11 of the Bankruptcy Code and to minimize the disruption of the Debtor as a going concern. Debtor is unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a super-priority

administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code; and other than the financing from Dr. Roland Valdes, the Debtor is unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the Debtor's estate pursuant to Section 364(c)(2) and (c)(3) of the Bankruptcy Code. The relief sought in the Motion is necessary to avoid immediate and irreparable harm and injury to the Debtor's estate.

15. Without the support of the DIP Financing, Debtor is not able to sustain its current operations due to ongoing cash needs.

## **RELIEF REQUESTED**

16. By this Motion, the Debtor requests the entry of an order (the "Order") authorizing the Debtor to: (a) obtain post-petition DIP Financing, and (b) grant liens and superpriority administrative expense status to Dr. Roland Valdes pursuant to sections 363 and 364 of the Bankruptcy Code.

17. The Debtor requests that the Debtor be authorized to pay the DIP Financing in accordance with the terms of the loan. A true and correct copy of the loan document is attached hereto as Exhibit "A."

18. The Debtor submits that ample justification exists for the approval of the proposed DIP Financing under section 364 of the Bankruptcy Code. An immediate and critical need existed for the Debtors to obtain funds from DIP Lender in order to continue the operation of the hotel.

19. Section 364(c) of the Bankruptcy Code authorizes a debtor-in-possession to obtain post-petition credit: If the trustee is unable to obtain unsecured credit allowable under section 503(b)(l) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt —

>  (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
>  (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
>  (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

20. Courts have articulated a three-part test to determine whether a debtor-in-possession is entitled to financing under section 364(c) of the Bankruptcy Code: whether (a) the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim; (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. *See, e.g., In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991); *In re Ames Dep't Stores. Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *In re Crouse Group. Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

21. The Debtor is unable to obtain credit that is not secured and is not granted superpriority administrative claim status. Under these circumstances, and given the Debtor's current financial status and the immediate need for funds, the Debtor believes that Dr. Roland Valdes will not provide financing to the Debtor, other than on a secured and superpriority basis.

The Debtor can show "by a good faith effort that credit was not available without" the protections of section 364(c)." *Bray v. Shenandoah Federal Say, and Loan Ass'n (In re Snowshoe Co.* 789 F.2d 1085, 1088 (4th Cir. 1986) ("[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); See *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992); *In re Sky Valley*, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing."), aff'd sub nom., *Anchor Say. Bank FSB v. Sky Valley, Inc.*, 99 B. R. 117, 120 n.4 (N.D. Ga. 1989); see also *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996) (holding that debtor was entitled to relief under section 364(c) after providing evidence that only one entity of several solicited would provide the debtor with post-petition financing upon the condition of superpriority for such loans).

22. Without the DIP Financing, the Debtor will not be able to assure the continued operation of the Debtor's business in a manner that will avoid irreparable harm to the Debtor and its estate. The ability of the Debtor to finance the company's operations and the availability to the Debtor of sufficient working capital and liquidity through the incurrence of new indebtedness and other financial accommodations are necessary to the preservation and maintenance of the going concern value of the Debtor's estate. For these reasons, access to credit under the DIP Financing is critical to the Debtor's operation and necessary to preserve the assets of the Debtor's estate for the benefit of its creditors.

26. Furthermore, the Debtor submits that this Court should defer to the Debtor's business judgment which led the Debtor to determine that the terms of the DIP Financing are reasonable under the circumstances and should be approved by this Court. Bankruptcy courts

routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Cob. 1985*)* ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus.. Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); *In re Hamilton Square Associates*, No. 91-14720S, 1992 WL 98294, at *1 (Bankr. E.D.Pa. May *5* 1992) (holding that a "debtor in possession's business judgement must be accepted if reasonable."). As one court has noted, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311(5th Cir. 1985).

27.     In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845*,* 849 (Bankr. W.D. Pa. 1987) (holding that "the court should not interfere with or second-guess the debtor's sound business judgement unless and until evidence is presented that establishes that the debtor's decision was one taken in bad faith or in gross abuse of its retained business discretion."); *See also In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Curlew Valley,* 14 B.R. at 513-14 (footnotes omitted); *In re Lynx Transport, Inc.,* No. 98-36433DAS, 1999 WL 615366, at *3 (Bankr. E.D.Pa. Aug. 11, 1999)

(holding that "a debtor- in-possession (DIP) is authorized to make its own independent business judgements.").

28. The terms and conditions of the DIP Financing were negotiated in good faith and at arms length by Dr. Roland Valdes and PGXL and, accordingly, the Debtor believes that any credit extended and loans made to the Debtor under the DIP Financing should be deemed to have been extended in good faith, within the meaning of section 364(e) of the Bankruptcy Code.

### MODIFICATION OF THE AUTOMATIC STAY

29. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition pursuant to the Bankruptcy Code. The Order contemplates a modification of the automatic stay (as necessary) to permit the Debtor to grant the applicable liens and to perform the obligations specified as part of the DIP Financing. Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities, and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

### CONCLUSION

30. The Debtor has exercised sound business judgment in determining that the DIP Loan is appropriate and has satisfied the legal prerequisites to borrow under the DIP Financing. The terms of the DIP Financing are fair and reasonable and are in the best interests of the Debtor's estates. Accordingly, the Debtor requests the Court grant authority to enter into the DIP Financing and to borrow funds from PCG on the secured administrative "superpriority" basis described above, pursuant to section 364(c) of the Bankruptcy Code, and take the other actions contemplated and requested herein.

**WHEREFORE,** the Debtor respectfully requests that this Court enter the Order pursuant to sections 105(a), 363, 364(c) and 105(a) of title 11 of the Bankruptcy Code and Bankruptcy

Rules 2002, 4001(c), and 9014 authorizing the Debtor to incur post-petition financing on a secured superpriority administrative expense basis on the terms described in this Motion and the Order and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ James E. McGhee III
CHARITY B. NEUKOMM
JAMES E. MCGHEE III
KAPLAN & PARTNERS LLP
710 West Main Street
4th Floor
Louisville, Kentucky 40202
Telephone: (502) 540-8285
Facsimile: (502) 540-8282
cneukomm@kplouisville.com
jmcghee@kplouisville.com
*Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

It is hereby certified that on November 9, 2016, a true and correct copy of the foregoing Motion was (a) mailed electronically through the U.S. Bankruptcy Court's ECF system at the electronic addresses as set forth in the ECF system to the U.S. Trustee and all other persons receiving electronic notifications in this case and (b) mailed, first-class, postage prepaid to those persons, if any, identified in the Court's Notice of Electronic Filing who do not receive electronic notice but are entitled to be served.

/s/ James E. McGhee III
CHARITY B. NEUKOMM
JAMES E. MCGHEE III

K:\Client Files\CBNJEM\PGXL\Pleadings\First Day Motions\Motion to Borrow PGXL.doc